**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

SAMUEL CANN,

        Plaintiff,

        v.

GARY LANIGAN, et al.,

        Defendants.

Civil No. 11-5742 (AET)

O P I N I O N

**APPEARANCES:**

Samuel Cann, Pro Se
224001/267860B
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

RECEIVED

JUL 1 2 2012

AT 8:30_____M
WILLIAM T. WALSH
CLERK

**THOMPSON, District Judge**

    Plaintiff, a state prisoner confined at the New Jersey State Prison, Trenton, New Jersey, brings this civil action alleging violations of his constitutional rights. He has applied to proceed in forma pauperis ("IFP"), pursuant to 28 U.S.C. § 1915. At this time, the Court must review the complaint, pursuant to 28 U.S.C. §§ 1915(e) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the following reasons, the complaint must be dismissed.

1

## **BACKGROUND**

Plaintiff seeks to sue various employees of the Department of Corrections and New Jersey State Prison. He states that in August of 2010, while working in the officers' dining room at the facility, he was informed that other inmates who worked in the officers' dining room were "locked up for contraband." (Complt., ¶ 5). Both inmates were permitted to return to their jobs. (Complt., ¶ 6).

On October 2, 2010, Plaintiff was washing pots in the officers' dining room when Captain Schmeilia asked Plaintiff to step away, cuffed him, and escorted him out. He was taken to an area to sit next to other inmate workers. (Complt. ¶¶ 7-8). The officers took them to the detention unit and said they were going to go search the dining room for contraband. (Complt., ¶ 9).

While in the detention unit, Plaintiff was strip searched. He did not receive any written infractions. He states that the next morning, while still in the detention unit, he woke up with an accelerated heart beat and shortness of breath, and requested medical attention. That evening he was taken to medical and examined by a nurse practitioner. He was released back to the detention unit. (Complt., ¶¶ 10-11).

Plaintiff submitted a grievance on October 4, 2010 asking to be released from the detention unit. The grievance went unanswered. On October 12, 2010, Plaintiff mailed a grievance

that he was concerned about his mental health diminishing due to being housed in the detention unit. He did not receive a specific response. A later filed grievance to the administrator was replied to, with Plaintiff being told that "until (S.I.D.) finished their investigation, your housing assignment will not change!" (Complt., ¶¶ 12-14).

On October 19, 2010, Plaintiff wrote another detailed grievance concerning his custody status, and the next day, he was released from detention. He expressed concern that his cell was in tact, since when under investigation by the S.I.D., most inmates would lose property during the investigation. However, Plaintiff was told he wasn't going to be working in the dining room, and wrote to the administrator that he should be allowed to return. (Complt., ¶¶ 16-17).

Plaintiff asserts that there were issues with his mail and legal phone calls and correspondence. (Complt., ¶¶ 18-22). In a February 17, 2011 letter, Plaintiff was informed that pertaining to his placement in detention, the administrators were not privy to S.I.D. reports. (Complt., ¶ 23). Plaintiff later wrote a letter asking for his original job assignment back. (Complt., ¶ 25). He was reassigned to sanitation with a 70% pay decrease, although the other inmates involved were permitted to have their jobs back. (Complt., ¶¶ 26-27).

3

Plaintiff asserts that his search and lock up were an illegal search and seizure, that his placement in the detention unit was malicious, and that his job reassignment violated his rights. He argues that his equal protection rights were violated because other inmates were given their jobs back, and that leaving him in the detention unit when he experienced medical problems violated his rights. (Complt., ¶¶ 28-31). He asks for monetary and other relief.

## DISCUSSION

**A.  Legal Standard**

**1.  Standards for a *Sua Sponte* Dismissal**

The Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding <u>in forma pauperis</u> or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to <u>sua sponte</u> dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. <u>See</u> 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b). This action is subject to <u>sua sponte</u> screening for dismissal under both 28 U.S.C. §§ 1915(e)(2)(B) and 1915A because Plaintiff is proceeding as an indigent and is a prisoner.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in Ashcroft v. Iqbal, 556 U.S. 662 (2009). The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Citing its opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court held that, to prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(citing Iqbal, 129 S. Ct. at 1948).

The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint

are plausible. See Iqbal, 129 S. Ct. at 1949-50. See also Twombly, 505 U.S. at 555, & n.3; Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011). "A complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211 (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).

2.  **Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

B.  **Plaintiff's Claims**

Plaintiff's complaints concerning his job placement and temporary housing in the detention unit fail to state a claim upon which relief may be granted.

A liberty or property interest protected by the Due Process Clause may arise from either of two sources: from the Due Process Clause itself or from statute or regulation. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v. Conner, 515 U.S. 472, 480, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Governments, however, by statute or regulation, may confer on prisoners liberty interests that are protected by the Due Process Clause.  "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical

and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest).

None of the losses enumerated by Plaintiff rises to the level of an "atypical and significant hardship ... in relation to the ordinary incidents of prison life," and, thus, even if they violate regulations guiding prison administration, none gives rise to procedural due process concerns.

More specifically, an inmate has no liberty or property interest in a particular prison job, or any prison job. See James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir.), cert. denied, 493 U.S. 870 (1989); Bryan v. Werner, 516 F.2d 233, 240 (3d Cir. 1975). Nor does a prisoner have a liberty interest in a particular housing assignment within a prison system. See McKune v. Lile, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); Hewitt v. Helms, 459 U.S. 460 (1983) (no liberty interest in remaining in general population rather than administrative segregation); Asquith, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did

not deprive him of protected liberty interest); <u>Barr v. DiGuglielmo</u>, 2008 WL 2786424 (E.D. Pa. 2008) (no liberty interest in being housed in particular wing of prison).

In this case, Plaintiff's claims must be dismissed, as he has no constitutional right to a particular job assignment or housing assignment.

Furthermore, Plaintiff has not pled a constitutional violation with regard to his medical care claim. Plaintiff states that he was seen and treated for his complaints, and does not allege either a serious medical injury nor deliberate indifference on the part of prison officials to his medical needs. See <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) (holding that in order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need).

### CONCLUSION

Based on the foregoing, Plaintiff's complaint must be dismissed for failure to state a claim upon which relief may be granted, without prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). An appropriate order accompanies this opinion.

_____
ANNE E. THOMPSON
United States District Judge

Dated: July 11, 2012

9